487 A.2d 396

COMMONWEALTH of Pennsylvania, Appellee

v.

Darrell Larue BLACK, Appellant.

Superior Court of Pennsylvania.

Argued May 7, 1984.

Filed Jan. 11, 1985.

David H. Acker, Public Defender, New Castle, for appellant.

William A. Behe, Deputy Attorney Gen., Harrisburg, for Commonwealth, appellee.

Before SPAETH, President Judge, and CAVANAUGH, WIEAND, CIRILLO, MONTEMURO, POPOVICH and HOFFMAN, JJ.

CAVANAUGH, Judge:

Appellant, 48-year-old Darrell L. Black, was charged with statutory rape,[1] corruption of minors,[2] incest,[3] and attempted involuntary deviate sexual intercourse[4] with respect to his thirteen-year-old daughter, Cynthia. After a jury trial, he was found guilty of all counts and sentenced to a term of

1. 18 Pa.C.S. § 3122.
2. 18 Pa.C.S. § 6301.
3. 18 Pa.C.S. § 4302.
4. 18 Pa.C.S. §§ 901 and 3123(5).

imprisonment of two and one-half to five years.[5]  This appeal followed.  Appellant challenges the lower court's application of Pennsylvania's Rape Shield Law, 18 Pa.C.S. § 3104,[6] which prevented him from introducing evidence of prosecutrix' prior sexual conduct with one of her brothers. We agree with appellant and remand for a new trial.

Black was accused of committing the present offenses during the 1979 Christmas holiday season.  The trial testimony revealed that during this time appellant resided with his family, including prosecutrix, in a four- or five-bedroom, single family dwelling.  On the night in question, the house was filled beyond capacity by out-of-town guests, bringing the total number of occupants to twelve or thirteen persons. The minor prosecutrix testified as follows.  After everyone had retired for the evening, her father asked her to come into his bedroom to massage his legs, a treatment required by his diabetic condition and routinely performed by members of his family in his bedroom.  She agreed to do this and after she finished, he motioned her to lie down on the bed with her back toward him.  He then pulled her underwear down and had sexual intercourse with her.  The victim maintained that the entire sexual episode occurred without a word being spoken.

5. Appellant also received three separate, but concurrent sentences of one and one-half to three years imprisonment each.

6. 18 Pa.C.S. § 3104 provides:

§ 3104. Evidence of victim's sexual conduct.

(a) General rule.—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

(b) Evidentiary proceedings.—A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

Appellant's version of the events that evening was that although his daughter was present in his room, no sexual contact occurred. As is common in sexual offense cases, the prosecutrix and appellant provided the only direct evidence for their respective versions and the case thus turned on their comparative credibility.

While the sexual incident was found to have occurred during Christmas, 1979, testimony indicated that Cynthia's complaints began to surface almost three months later, near the end of March, 1980. These complaints coincided with violent arguments between appellant and prosecutrix' fifteen-year-old brother, which culminated in the brother leaving home and separating from the family, including prosecutrix. Cynthia admitted wanting her brother back in the home, and other testimony indicated that as soon as appellant was arrested and removed, the fifteen-year-old brother contacted the family and sought to return home. In his defense, appellant offered to show through cross-examination that Cynthia had maintained an ongoing, consensual sexual relationship with this brother, which ended when the brother left home. Appellant contends that the true extent of prosecutrix' bias against him could only be revealed by showing the abnormal, sexual relationship which she had with her brother and which had been terminated by appellant's dispute with her brother. Specifically, appellant urges that Cynthia's testimony can only be weighed fairly when measured against her desire, first, to punish appellant for his interference with her sexual relationship with her brother, and, second, to remove appellant from the home so that her brother might return and resume the relationship. As noted above, the lower court excluded this evidence of prosecutrix' prior sexual conduct with her brother, relying on the Rape Shield Law.

■ We begin by noting the modern rule that prior sexual conduct with third persons is ordinarily inadmissible to attack the character of the prosecutrix in sex offense cases. 1A Wigmore, Evidence § 62 (Tillers rev. 1983). However, in this case the evidence of prior sexual conduct was not

offered merely to show any general moral turpitude or defect of the prosecutrix, but rather to reveal a specific bias against and hostility toward appellant and a motive to seek retribution by, perhaps, false accusation.  Particularly, appellant contends, if a parent and child were simply quarrelling, one would not normally expect a sibling to harbor a strong bias against the parent and in favor of the child.  However, as appellant suggests, an ongoing, consensual sexual relationship between Cynthia and her brother would be a telling factor in understanding where her allegiance lay.  In this regard, it is well settled that a party has the right to show by cross-examination that an adverse witness has a bias against him, or otherwise has an interest in the outcome of the trial.  *Commonwealth v. Cheatham,* 429 Pa. 198, 239 A.2d 293 (1968); *Commonwealth v. Ervin,* 262 Pa.Super. 322, 396 A.2d 776 (1978); 3A Wigmore, Evidence § 948 (Chadbourn rev. 1970).

In contrast to the broad, common law rule permitting cross-examination to show bias, we are confronted with Pennsylvania's Rape Shield Law, which provides, in pertinent part, that "[e]vidence of specific instances of the alleged victim's past sexual conduct, ... shall not be admissible in prosecutions under [Chapter 31] ...", relating to sexual offenses.  18 Pa.C.S. § 3104(a).[7]  The lower court relied on this plain statutory language, as well as our recent opinion in *Commonwealth v. Duncan,* 279 Pa.Super. 395, 421 A.2d 257 (1980), in holding the evidence inadmissible.

■ Appellant, however, contends that the Rape Shield Law, as applied below, improperly infringed upon his right of confrontation guaranteed by the Sixth Amendment to the United States Constitution.[8, 9]  Although the United States

7. The only express exception to this broad prohibition is where consent is an issue and the sexual conduct is with defendant.  This case, however, involves statutory rape where consent is not at issue, and, further, the conduct here involves a third person, not defendant-appellant.  Consequently, this exception does not come into play.

8. The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right ... to be

Supreme Court has not ruled directly on any of the numerous, recently enacted rape shield laws, in *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), it considered a criminal defendant's Sixth Amendment right of confrontation with respect to a juvenile law which shielded a prosecution witness from cross-examination based on his juvenile record.

In *Davis,* the prosecution witness testified that he had found abandoned and recently stolen property near his home and reported this to police. The witness also identified the defendant as a man he had seen in the vicinity the night before he discovered the stolen property. The defendant sought to impeach the witness by introducing evidence of the witness' juvenile record for burglary and his current probationary status. The defendant argued that since the stolen property turned up suspiciously close to the witness' home, the witness himself could easily have been a prime suspect. The fact and nature of the witness' juvenile record and probationary status would tend to cast more suspicion on the witness and thus augment his motive to falsely identify defendant in order to shift official attention away from himself. The lower court in *Davis* excluded evidence of the witness' juvenile history relying on a state statute flatly prohibiting admission of such evidence against the juvenile in subsequent proceedings.

In holding that the lower court's application of the state statute had violated the defendant's Sixth Amendment right of confrontation, the *Davis* court stated:

confronted by the witnesses against him." The same right is protected by Article 1, Section 9 of the Pennsylvania Constitution.

9. We also note that in contrast to *Commonwealth v. Duncan, supra,* this constitutional question has been properly preserved for our review. Contrary to the contention of the Attorney General, the question was raised generally in post-verdict motions and fully briefed before the lower court. *See Commonwealth v. Quartman,* 312 Pa.Super. 349, 458 A.2d 994 (1983); *Commonwealth v. Holmes,* 315 Pa.Super. 256, 461 A.2d 1268 (1983). *Cf. Commonwealth v. Burton,* 491 Pa. 13, 417 A.2d 611 (1980); *Commonwealth v. Davenport,* 307 Pa.Super. 102, 452 A.2d 1058 (1982).

The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is secured for defendants in state as well as federal criminal proceedings under *Pointer v. Texas*, 380 US 400, 13 L Ed 2d 923, 85 S Ct 1065 (1965). Confrontation means more than being allowed to confront the witness physically. "Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination." *Douglas v. Alabama*, 380 US 415, 418, 13 L Ed 2d 934, 85 S Ct 1074 (1965)....

Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, ... the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. ... [One] attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A J. Wigmore Evidence § 940, p 775 (Chadbourn rev 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Greene v McElroy*, 360 US 474, 496, 3 L Ed 2d 1377, 79 S Ct 1400 (1959).

*Davis v. Alaska*, 415 U.S. at 315–17, 94 S.Ct. at 1109–1111 (footnote omitted). *See also Commonwealth v. Slaughter*, 482 Pa. 538, 394 A.2d 453 (1978); *Commonwealth v. Mines*, 321 Pa.Super. 529, 468 A.2d 1115 (1983).

Although Alaska's legitimate interest in promoting rehabilitation by preserving a juvenile's anonymity was recognized, the Court held that where a criminal defendant sought to introduce significant evidence of bias, the defend-

ant's right of confrontation was paramount to the state's policy of protecting and rehabilitating juveniles. The Court stated that

> [w]hatever temporary embarrassment might result to Green or his family by disclosure of his juvenile record— if the prosecution insisted on using him to make its case—is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness.

*Davis v. Alaska*, 415 U.S. at 319, 94 S.Ct. at 1112.

We find the juvenile statutes in *Davis* and the Rape Shield Law in this case strikingly similar. Both laws are designed to protect designated classes of persons by shielding them from the public humiliation and opprobrium which would naturally flow from the disclosure of the suppressed evidence; both laws seek to afford the designated classes an opportunity to start anew. *Compare In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) *with Commonwealth v. Strube*, 274 Pa.Super. 199, 418 A.2d 365 (1979), *cert. denied*, 449 U.S. 992, 101 S.Ct. 527, 66 L.Ed.2d 288 (1980). We can not distinguish the present case from *Davis v. Alaska, supra*, and therefore are constrained to reverse and remand for a new trial.[10] In so holding, we note that other jurisdictions which have considered like challenges to

10. Appellant also offered the evidence of prosecutrix' sexual relations with her brother to show her source of sexual knowledge. The prosecutrix' description of the sexual act in question was such that it demonstrated a knowledge of adult male physiology which was likely only acquired through actual experience. Appellant argued that if the source of prosecutrix' sexual knowledge were left unexplained, the jury would infer that a child of such tender years had obtained it from what appeared to be the only available source: the appellant. We agree with appellant that under these circumstances, the evidence may be relevant to show the witness' source of knowledge. *See, e.g., State v. Howard*, 121 N.H. 53, 426 A.2d 457 (1981). We emphasize, however, that evidence of prior sexual conduct to show source of knowledge should be admitted in only limited circumstances. On the record before us, we decline to decide whether such evidence will be admissible in this matter. That determination is properly left to the court below which must also weigh the potentially unfair prejudice to the prosecutrix against the probative value of the testimony. *See Commonwealth v. Stewart*, 304 Pa.Super. 382, 450 A.2d 732 (1982). *See also* 1A Wigmore, Evidence § 62, at 1311 (Tillers rev. 1983).

their rape shield laws are in accord. *See State v. LaClair,* 121 N.H. 743, 433 A.2d 1326 (1981); *Marion v. State,* 267 Ark. 345, 590 S.W.2d 288 (1979); *State v. Jalo,* 27 Or.App. 845, 557 P.2d 1359 (1976); *Maryland v. Delawder,* 28 Md.App. 212, 344 A.2d 446 (1975); Annot., 1 A.L.R. 4th 283 (1980). *See also* Tanford and Bocchino, *Rape Victim Shield Laws and the Sixth Amendment,* 128 U.Pa.L.Rev. 544 (1980).

■ While we hold that Pennsylvania's Rape Shield Law may not be used to exclude relevant evidence showing witness' bias or attacking credibility, we do not hold that all material evidence is necessarily admissible. Although logically relevant, evidence tending to show the victim's prejudice or lack of credibility may be excluded if "it would so inflame the minds of the jurors that its probative value is outweighed by unfair prejudice." *Commonwealth v. Stewart,* 304 Pa.Super. 382, 387, 450 A.2d 732, 734 (1982) (quoting *Commonwealth v. Strube,* 274 Pa.Super. 199, 216, 418 A.2d 365, 374 (1979) (citations omitted), *cert. denied,* 449 U.S. 992, 101 S.Ct. 527, 66 L.Ed.2d 288 (1980)). *Cf. Fed.R. Evid.* 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...."). This balancing determination between probative value and unfair prejudice should be made by the trial court at an *in camera* hearing similar to that outlined in 18 Pa.C.S. § 3104(b).[11] At this hearing, the trial court should determine the following as a matter of record to be preserved for appellate review: (1) whether the proposed evidence is relevant to show bias or motive or to

11. The use of *in camera* hearing procedures to determine whether the proffered evidence is admissible has been adopted in other states. *See, e.g., Marion v. State,* 267 Ark. 345, 590 S.W.2d 288 (1979) (Arkansas rape shield statute provides for an *in camera* hearing and probative value—unfair prejudice assessment); *State v. Clarke,* Iowa, 343 N.W.2d 158 (1984) (Iowa rape shield law provides for written motion and offer of proof, *in camera* hearing, and probative value-unfair prejudice assessment); *Commonwealth v. Frey,* 390 Mass. 245, 454 N.E.2d 478 (1983) (Massachusetts rape shield act provides for an *in camera* hearing and a relevance-prejudice assessment).

attack credibility; (2) whether the probative value of the evidence outweighs its prejudicial effect; and (3) whether there are alternative means of proving bias or motive or to challenge credibility.

We emphasize that our holding today is not meant to limit the importance of the general principles embodied in the Rape Shield Law, particularly, that evidence of sexual conduct with third persons is irrelevant to prove either general moral defect or consent of the victim. We also reaffirm the trial court's responsibility to limit repetitive and unnecessarily harrassing cross-examination in all cases, but especially these most sensitive situations. But, in spite of the trial court's appropriately broad discretion in controlling the examination of witnesses, we cannot approve the complete elimination of a relevant and crucial line of cross-examination. We therefore hold that insofar as the Rape Shield Law purports to prohibit the admission of evidence which may logically demonstrate a witness' bias, interest or prejudice or which properly attacks the witness' credibility,[12] it unconstitutionally infringes upon an accused's right of confrontation under the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution.[13]

Reversed and remanded to the lower court for a hearing in accordance with this Opinion. If, as a result of that hearing, the court decides that the evidence offered in support of defendant's claim of bias or challenging the witness' credibility should be admitted, a new trial shall proceed. If the court decides that such evidence should not be admitted, a new appeal may be taken. Jurisdiction relinquished.

POPOVICH, J., concurs in the result of the opinion.

12. *See* note 10 *supra.*

13. We find that other issues raised by appellant were either correctly decided by the court below, or unnecessary to reach in light of our holding.

WIEAND, J., files concurring and dissenting opinion.

CIRILLO and MONTEMURO, JJ., join concurring and dissenting opinion by WIEAND, J.

WIEAND, Judge, concurring and dissenting:

Darrell LaRue Black was tried by jury and was found guilty of statutory rape and related offenses arising from an alleged act of sexual intercourse with his thirteen year old daughter. In an effort to expose bias and a motive for testifying falsely, the defense offered to show that Black had been responsible for interrupting an illicit and ongoing, incestuous relationship between the witness and her brother. From this the defense intended to argue that the witness was motivated by revenge and by a desire to be rid of her father so that her brother, who had left the home, could return. The trial court excluded evidence of the sexual relationship between the witness and her brother for two reasons. The first reason given by the court was the Rape Shield Law,[1] which renders inadmissible instances of an alleged victim's prior sexual conduct. The second reason given by the court was that the probative value of the witness' prior sexual conduct with her brother was "outweighed by the potential for prejudice and collateral distraction which this sort of inflammatory material would inject into the trial." Trial court opinion at p. 3. The majority holds that the Rape Shield Law cannot validly be used to prevent introduction of the alleged victim's past sexual history to show bias. It remands, however, for an in camera hearing to determine whether the relevancy of this evidence is outweighed by the prejudice it will cause to the witness. I am of the opinion that a remand for an in camera hearing is unnecessary—the trial court has already determined that the probative value of the evidence is outweighed by its prejudice—and that this Court should review the evidentiary ruling of the trial court on the basis of the existing record. Therefore, I dissent. Having reviewed the record, I would find that exclusion of this

1. 18 Pa.C.S. § 3104.

evidence was an abuse of discretion and would remand for a new trial.

I agree fully with the majority that there will be occasions when an accused's right to confront his accuser will require that he be permitted to show the sexual history of the accuser in order to expose bias or a motive to testify falsely. In such cases, the Pennsylvania Rape Shield Law cannot validly be asserted to deny the accused's right to a fair trial. See: *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). See also: *State v. Jalo,* 27 Or.App. 845, 557 P.2d 1359 (1976). Thus, rape shield laws in other states expressly permit evidence of past sexual conduct in order to show bias or motive to fabricate on the part of the complaining witness. See: *Marion v. State,* 267 Ark. 345, 590 S.W.2d 288 (1979); *State v. Clarke,* 343 N.W.2d 158 (Iowa 1984); *Commonwealth v. Frey,* 390 Mass. 245, 454 N.E.2d 478 (1983); *State v. Hill,* 309 Minn. 206, 244 N.W.2d 728 (1976).

It is an accepted method of attacking the credibility of an accuser to expose bias or a motive to testify falsely. *Commonwealth v. Cheatham,* 429 Pa. 198, 203, 239 A.2d 293, 296 (1968). "The law recognizes that a witness's self-interest or feelings toward the defendant can slant testimony." Tanford and Bocchino, *Rape Victim Shield Laws And The Sixth Amendment,* 128 U.Pa.L.Rev. 544, 582 (1980). In the instant case, the evidence of the sexual relationship between the Commonwealth's witness and her brother, as the majority has aptly observed, was clearly relevant to show the animosity borne by the witness for her father who arguably had been responsible for terminating that incestuous relationship.

If the accusing witness' relationship with her brother was probative of a bias against the accused or of a motive to falsify, however, I am unable to fathom by what legerdemain the accused could properly be denied the right to introduce evidence of it. How can evidence of bias and motive to testify falsely be so prejudicial to the accusing witness that it cannot be introduced by the accused? Can

the possible adverse effect upon a witness be grounds for excluding highly probative evidence which tends to prove that the accusation is false?

To speak in terms of prejudice to the witness is, in fact, to miss the point. When we speak of the prejudicial effect of evidence, we concede its relevance but ask, "is its value worth what it costs?" McCormick, *Handbook of the Law of Evidence,* § 185 (2d ed. 1972). Thus, a court may exclude relevant evidence because of the danger that it will unduly arouse the jury's prejudice, hostility, or sympathy and thereby encourage a verdict based on emotion rather than calm reflection. See: *Commonwealth v. Majorana,* 503 Pa. 602, 610, 470 A.2d 80, 84 (1983); *Commonwealth v. Green,* 290 Pa.Super. 76, 84–85, 434 A.2d 137, 141 (1981); *Commonwealth v. Reynolds,* 256 Pa.Super. 259, 273–274, 389 A.2d 1113, 1120 (1978); *Commonwealth v. Honeycutt,* 227 Pa.Super. 265, 270, 323 A.2d 775, 778 (1974). A court may also exclude relevant evidence because it will create a collateral issue likely to distract the jury unduly. See: *McCaffrey v. Schwartz,* 285 Pa. 561, 572–573, 132 A. 810, 814 (1926); *Commonwealth v. Lee,* 262 Pa.Super. 280, 293, 396 A.2d 755, 761 (1978), *overruled on other grounds, Commonwealth v. Thompkins,* 311 Pa.Super. 357, 457 A.2d 925 (1983). A trial judge may also exclude evidence because of the danger of unfair surprise to an opponent. McCormick, *supra* at § 185. Finally, a court may exclude evidence which is cumulative or which will, together with counter proof, consume an inordinate amount of time. See: *Commonwealth v. Nesbitt,* 276 Pa.Super. 1, 7, 419 A.2d 64, 67 (1980). This balancing test is equally applicable to determine the admissibility of otherwise relevant evidence of a witness' prior sexual history. Whether the evidence should be admitted or excluded must rest in the exercise of a sound discretion by the trial court. *Commonwealth v. Lee, supra; Commonwealth v. Reynolds, supra* 256 Pa.Super. at 273, 389 A.2d at 1120; *Commonwealth v. Honeycutt, supra.*

The defense in the instant case was able to show, both by cross-examination of the prosecuting witness and by independent defense evidence, that the witness' brother, DeRel, had left home following an argument with appellant in March, 1980 and that thereafter the police had been told of possible child abuse by appellant on or about March 24, 1980. Appellant was arrested early in April, 1980; and thereafter, the witness' brother called his mother to request permission to return home. The defense was also permitted to show that on an earlier occasion the witness had falsely accused her brother of having sexual relations with her following an argument. Finally, the defense showed that the witness had made prior inconsistent statements accusing appellant of engaging in sex with her on other occasions. Nevertheless, the court refused to allow evidence that the thirteen year old daughter had a sexually oriented motive for making false accusations against her father. Appellant was not allowed to show that the alleged victim of his sexual advances had a personal interest in forcing him from the home so that her brother could return to resume an incestuous relationship. This, in my best judgment, was a manifest abuse of discretion which requires a new trial. See: *Commonwealth v. Dawson,* 486 Pa. 321, 405 A.2d 1230 (1979); *Commonwealth v. Cheatham, supra.* See also: *Commonwealth v. Hayward,* 437 Pa. 215, 263 A.2d 330 (1970).

It must be conceded, of course, that evidence of this nature possesses an inherent danger that a jury will be distracted from the issue of the accused's guilt or innocence and decide the case on the basis of the accusing witness' prior sexual acts. The danger is no greater, however, than the danger that a jury, having heard evidence of an accused's prior convictions, will convict merely because the accused is a criminal. Evidence of prior convictions of offenses which are crimen falsi is universally admitted to attack the credibility of a witness even though the witness may also be a defendant. It is inconceivable that a court would grant an alleged rape victim greater protection

against prejudicial testimony than one who is accused of serious crime. See: Tanford and Bocchino, *supra* at 574–575.

The evidence in the instant case was neither remote nor insignificant. The offense charged was a heinous one which, by its very nature, is repulsive to most persons in contemporary society. It constituted child abuse, an offense against which community feelings run high. However, it was also an offense that would not have been committed in public or in front of witnesses. If the offense occurred, it would have occurred in the privacy of a bedroom. Thus, it was not susceptible of proof by disinterested witnesses. The only direct evidence of that which actually transpired in the bedroom had to come from interested parties, viz, the accuser and the accused. To exclude evidence that the accuser may have been motivated by animosity toward her accused father because he had interrupted an incestuous relationship which she had been carrying on with her brother and that she may also have been motivated by a desire to compel her father's removal from the home so that the brother could return and the incestuous relationship be resumed is, indeed, to deprive the accused of a fair trial by denying him the right to confront his accuser.

The majority and I are agreed that the Pennsylvania Rape Shield Law cannot validly be asserted to exclude this relevant evidence. However, I am unable to comprehend how such evidence can then be excluded on grounds that it may be "prejudicial." To remand for an in camera hearing to determine prejudice, in view of the determination already made by the trial court, is a useless act. I would hold that the trial court's determination that the evidence was excludable because it was prejudicial constituted an abuse of discretion. I would remand for a new trial.

CIRILLO and MONTEMURO, JJ., join concurring and dissenting opinion by WIEAND, J.