J-A16013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALBERT WILLIAMS | : | |
| | : | |
| Appellant | : | No. 1563 MDA 2018 |

Appeal from the Judgment of Sentence Entered April 27, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005235-2017

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY LAZARUS, J.:          **FILED: JULY 22, 2019**

Albert Williams appeals from the judgment of sentence, entered in the Court of Common Pleas of York County, following his conviction of second-degree felony sexual assault.[1]  After careful review, we affirm.

On January 27, 2017, A.T.[2] went to the M & M Lounge (Lounge) around 7:30 p.m.  A.T. consumed alcohol and made conversation with a few individuals, including Williams.  Williams exited the Lounge and walked to his vehicle at 1:39 a.m.  A.T. did not exit the Lounge until 2:15 a.m.  Due to her intoxication, fellow patron Samantha Ness assisted A.T.  Ness helped A.T. into Ness' vehicle, at which time A.T. noticed Williams standing next to a vehicle.  Williams remained by his vehicle in the parking lot from the time he

---

[1] 18 Pa.C.S. § 3124.1.

[2] Due to the nature of the charges in this case, this Court will be using the victim's initials rather than her name.

---

*   Former Justice specially assigned to the Superior Court.

exited the Lounge at 1:39 a.m. until 2:25 a.m., when Ness drove out of the Lounge parking lot. Williams immediately followed Ness in exiting the parking lot and drove in the same direction.

Ness arrived at A.T.'s home and helped her exit the vehicle. At the same time, Williams exited his vehicle. Ness asked A.T. if she knew Williams; A.T. was confused and gestured in a way that suggested she did. A.T. believed that Ness and Williams knew each other, wanted a place hang out, and that she was agreeing to let them use her home. Ness, however, left A.T. with Williams and drove away. A.T.'s next memory is of awakening on the couch while Williams was having vaginal intercourse with her. A.T. attempted to push Williams away, stating he was hurting her and she did not consent; however, he was too strong. A.T. then remembers Williams fixing his shirt cuffs.

When A.T. was able to recall what happened the night before, she called the crisis center at York Hospital and spoke with a representative from the Shelter for Abused Women. At 4:50 a.m. on January 29, 2017, A.T. was examined 4at York Hospital by Nurse Patti O'Brien. Nurse O'Brien testified that A.T.'s entire vaginal area was tender with mild discharge. Two small lacerations found on the vaginal wall were indicative of some type of trauma. Nurse O'Brien collected DNA samples.

On January 30, 2017, Detective Tiffany Pitts of the York City Police was assigned to A.T.'s case. A.T. identified Williams on February 6, 2017, and Detective Pitts obtained surveillance footage from the Lounge, as well as

Williams' cell phone records. The resulting evidence enabled Detective Pitts to place Williams at the Lounge and A.T.'s home on the night in question.

On May 2, 2017, Detective Pitts conducted a recorded voluntary interview with Williams. Williams first stated that he did not go to the Lounge by himself, that he has never left the Lounge with a woman and that he always leaves before 10:00 PM. After learning A.T. had been examined, Williams changed his story and said he could not remember if he had sex with anyone after leaving the Lounge that night. Williams continued to change his story. Upon learning Detective Pitts had video surveillance and cell phone records to prove his whereabouts, Williams contributed a DNA sample and described a consensual version of events. The sample matched the sperm found inside A.T. and on her underwear. Williams claimed that A.T. never said "no," but that he knew she was very intoxicated. He also admitted he had to "wake her up" before departing, even though he had previously claimed he had left immediately after the consensual sex.

On March 15, 2018, following a jury trial, Williams was convicted of second-degree felony sexual assault and acquitted on the charge of rape of an unconscious victim. On April 27, 2018, Williams was sentenced to five to ten years' incarceration, ordered to pay all costs, and was given 306 days' credit for time served. Williams filed a post-sentence motion on the same day, which was denied on August 24, 2018.

On September 21, 2018, Williams filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Williams raises the following issue for our review:

> Did the trial court err in excluding evidence that the sexual assault complainant had previously made allegations of assault against other people than Albert Williams, and these allegations had not resulted in convictions?

Appellant's Brief, at 4.

It is well settled that "[t]the admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." **See Commonwealth v. Woodard**, 129 A.3d 480, 494 (Pa. 2015). An abuse of discretion occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. **Id.**

The purpose of the Rape Shield Law is to "prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim." **Commonwealth v. Burns**, 988 A.2d 684, 689 (Pa. Super. 2009). Its intention is to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants. Id. One statutory exception to the Rape Shield Law is the admission of evidence of past sexual conduct with the defendant where consent is at issue. **See** 18 Pa.C.S. § 3104(a). The Rape Shield Law does not bar evidence of past sexual assault allegations by the victim, but the question is whether the testimony is relevant

and material under the traditional rules of evidence. **See Commonwealth v. Johnson**, 638 A.2d 940 (Pa. 1994). The Rape Shield Law may not be used to exclude relevant evidence showing witness' bias or to attack a witness' credibility, but not all material evidence is necessarily admissible, as explained in **Commonwealth v. Black**, 487 A.2d 396 (Pa. Super. 1985):

> The balancing determination between probative value and unfair prejudice should be made by the trial court at an in camera hearing where the court should determine the following as a matter of record to be preserved for appellate review: (1) whether the proposed evidence is relevant to show bias or motive or to attack credibility; (2) whether the probative value of the evidence outweighs its prejudicial effect; and (3) whether there are alternative means of proving bias or motive to challenge credibility.

**Id.** at 401.

During her interview, A.T. divulged that she "was once molested when she was a child and there was a rape allegation at the age of 18." N.T., 3/12/18, at 27. Williams argues that this evidence, "A.T's history of unfounded allegations of sexual assault[,]" bears directly on A.T.'s credibility and, therefore, the court erred in excluding it. Appellant's Brief, at 17. The trial court determined that the evidence showed no specific bias against Williams and, therefore, was an irrelevant, collateral matter. We agree.

Williams admitted to having sexual intercourse with A.T., and claimed A.T. never said "no." Recorded Interview, 5/2/17, at 10:30:57. Throughout the interview, however, Williams states that he knew A.T. was very intoxicated. **Id.** The issue, therefore, was consent. The evidence pertaining

to previous accusations is not relevant to the issue of consent between Williams and A.T. Furthermore, the proposed evidence is not probative of any bias, hostility, or motive to seek retribution against Williams.

Williams filed a motion *in limine* to allow the evidence of the previous sexual assault allegations.[3] N.T., 3/12/18, at 18. The trial court believed that these prior allegations were relevant to A.T.'s credibility; however, the issue was whether the evidence was admissible. *Id.* at 23. The trial court stated that impeaching credibility based on prior conduct or prior specific incidences is not permissible; the court then underwent an analysis and application of *Black*. *Id.* at 26-32. The court made the distinction that, although the Rape Shield Law would not preclude the evidence, the evidence must "specifically allege or show that the alleged victim has a bias against [Williams] or has some motive to fabricate regarding [Williams], not just in general." *Id.* at 30. We agree. The Rape Shield Law is inapplicable here. Evidence that A.T. had been subject to previous sexual assaults would not reflect upon her reputation for chastity. "To be a victim is not "conduct" of the person victimized. It would be illogical to conclude that the Rape Shield Law intended to prohibit this type of testimony." *Commonwealth v. Johnson*, 638 A.2d 940, 942 (Pa. 1994).

Williams relies on *Commonwealth v. Dillon*, 925 A.2d 131 (Pa. 2007), to support his argument. His reliance, however, is misplaced. In *Dillon*, our

---

[3] The court heard argument on the motion. Although the court did not hold an *in camera* hearing, Williams agreed that the argument would suffice. N.T., 3/12/18, at 33.

Supreme Court held that evidence of defendant's physical abuse of the victim's mother and brother, which intimidated the victim, was admissible at trial on defendant's charge of sex offense as substantive evidence in the Commonwealth's case-in-chief to explain the victim's lack of prompt complaint. The Court stated:

> [A] sexual assault prosecution oftentimes depends predominately on the victim's credibility, which is obviously affected by any delay in reporting the abuse. Revealing the circumstances surrounding an incident of sexual abuse, and the reasons for the delay, enables the factfinder to more accurately assess the victim's credibility.

*Id.* at 138-39. Delay in reporting, however, was not an issue here.

We agree with the trial court's assessment. The mere fact that A.T. indicated in her interview "that she was molested when she was a child and was raped at the age of 18, has no bearing on whether the sexual intercourse [Williams] had with [A.T.] was without her consent." Trial Court Opinion, 11/26/18, at 3. There was no evidence, other than the conduct that forms the basis of the charges in this case, that A.T. was biased against or hostile toward Williams or had a motive to seek retribution. The trial court properly excluded the evidence of prior sexual assault claims. We find no abuse of discretion. *Woodard*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/22/2019