J-A29019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES T. BYRD | : | |
| | : | |
| Appellant | : | No. 1126 WDA 2024 |

Appeal from the Judgment of Sentence Entered March 5, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0003369-2016

BEFORE:  OLSON, J., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:                **FILED:  April 17, 2026**

Appellant, James T. Byrd, appeals from the judgment of sentence entered March 5, 2024, as made final by the denial of his post-sentence motion by operation of law on July 15, 2024.[1]  We affirm.

---

[1] Appellant was sentenced on March 5, 2024 and filed a timely post-sentence motion on March 15, 2024.  Appellant's motion remained outstanding until, on August 8, 2024, the trial court entered an order denying his post-sentence motion.  The trial court's August 8, 2024 order was entered 146 days after Appellant filed his post-sentence motion.  Appellant filed his notice of appeal on September 9, 2024.  Pursuant to Pa.R.Crim.P. 720(B)(3)(a), the trial court was required to "decide the post-sentence motion, including any supplemental motion, within 120 days of the filing of the motion," *i.e.*, on or before July 15, 2024. Pa.R.Crim.P. 720(B)(3)(a).  The trial court, however, "fail[ed] to decide the motion within 120 days, or to grant an extension[; accordingly,] the motion [was] deemed denied by operation of law" on July 15, 2024.  *Id.* Furthermore, "the clerk of courts [was required] to enter an order on behalf of the court . . . that the post-sentence motion [was] deemed denied" in its entirety.  Pa.R.Crim.P. 720(B)(3)(c).  Here, the clerk of courts did not enter an order deeming Appellant's post-sentence motion denied, nor did the clerk's office notify Appellant of the denial of his motion by operation of law.
*(Footnote Continued Next Page)*

J-A29019-25

Our Supreme Court previously summarized the facts of this case as follows.

> In April 2015, Appellant . . . moved in with [D.H., hereinafter, ("the Victim")] after being released on bail for charges filed in February, 2015 that are unrelated to this case. While residing with [the Victim], Appellant learned she was taking Seroquel, a prescription anti-psychotic medication. Appellant observed that the medication made her drowsy, and told [the Victim] that he did not approve of her taking the medicine. He thereupon took the Seroquel away from her in order to control when she could take the medication. Unbeknownst to [the Victim], on an occasion in mid-May 2015, Appellant apparently gave [the Victim] a larger dose than was prescribed, causing [her] to become unconscious.
>
> Later in May, Appellant showed [the Victim], and her friend, Carlos Dukes, a cell[ular tele]phone video of [the Victim] in her state of unconsciousness on the aforementioned occasion. As recounted by [the Victim], the video showed Appellant removing her clothes, rubbing his penis on her face, inserting his penis in her mouth, and engaging in vaginal and anal intercourse with her, all while she remained unconscious. [The Victim] later told investigating officers that Appellant told her the video should serve as a warning to her on the dangers of taking Seroquel.

***Commonwealth v. Byrd***, 235 A.3d 311, 313 (Pa. 2020).

---

Ordinarily, "[i]f the defendant files a timely post-sentence motion, the notice of appeal shall be filed [] within 30 days of the entry of the order denying the motion by operation of law in cases in which the judge fails to decide the motion." Pa.R.Crim.P. 720(A)(2)(b). However, "[t]his Court has previously held that, where the clerk of courts does not enter an order indicating that the post-sentence motion is denied by operation of law and notify the defendant of same, a breakdown in the court system has occurred and we will not find an appeal untimely under these circumstances." ***Commonwealth v. Perry***, 820 A.2d 734, 735 (Pa. Super. 2003) (citation omitted). On this basis, we consider Appellant's notice of appeal timely filed.

- 2 -

On March 16, 2016, Appellant was charged with various offenses relating to the aforementioned conduct. On October 11, 2016, Appellant filed a motion to suppress, which the trial court subsequently granted. This Court, however, later reversed the trial court's order and our order was affirmed upon further review. **See Commonwealth v. Byrd**, 2018 WL 1465219 *1 (Pa. Super. 2018) (non-precedential decision), *aff'd* **Byrd**, **supra**. On remand, the matter proceeded to a jury trial in December 2023. Ultimately, Appellant was convicted of one count of rape – person unconscious, two counts of involuntary deviate sexual intercourse ("IDSI") – person unconscious, two counts of aggravated indecent assault – person unconscious, indecent assault – person unconscious, invasion of privacy, persons not to possess a firearm, and two counts of terroristic threats.[2]

On March 3, 2024, before Appellant's sentencing, the Commonwealth filed notice of its intent to invoke the mandatory minimum sentence authorized by 42 Pa.C.S.A. § 9714. Appellant's sentencing took place on March 5, 2024. On that day, the trial court sentenced Appellant to an aggregate term of 49 to 98 years' incarceration, followed by three years' probation. More specifically, the trial court sentenced Appellant as follows:

- Count 1: Rape – Person Unconscious – 10 to 20 years' incarceration, followed by three years' probation.

- Count 2: IDSI – Person Unconscious – 10 to 20 years' incarceration, followed by three years' probation.

---

[2] 18 Pa.C.S.A. §§ 3121(a)(3), 3123(a)(3), 3125(a)(4), 3126(a)(4), 7507.1(a)(1), 6105(a)(1), and 2706(a)(1), respectively.

- Count 3: IDSI - Person Unconscious – 10 to 20 years' incarceration, followed by three years' probation.

- Count 4: Aggravated Indecent Assault - Person Unconscious – 10 to 20 years' incarceration, followed by three years' probation.

- Count 5: Aggravated Indecent Assault - Person Unconscious – 10 to 20 years' incarceration, followed by three years' probation.

- Count 6: Indecent Assault – Person Unconscious – Two to four years' incarceration, followed by three years' probation.

- Count 7: Invasion of Privacy – No further penalty.

- Count 8: Persons not to Possess a Firearm – Five to 10 years' incarceration, followed by three years' probation.

- Count 9: Terroristic Threats – One to two years' incarceration.

- Count 10: Terroristic Threats – One to two years' incarceration.

Sentencing Order, 3/5/24. The trial court ordered the aforementioned prison sentences to run consecutively, while the periods of probation were imposed concurrently.

Appellant filed a post-sentence motion on March 15, 2024, which was denied by operation of law on July 15, 2024. On August 8, 2024, the trial court amended Appellant's sentence and removed the consecutive probationary period for Appellant's indecent assault – person unconscious

J-A29019-25

conviction. Otherwise, Appellant's sentence remained unchanged. This appeal followed.[3]

_____

[3] On September 17, 2024, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P. 1925(b). On October 8, 2024, Appellant requested an extension, which was granted by the trial court that day. On November 7, 2024, Appellant requested an additional extension, specifically asking the trial court for an additional 60 days to file a Rule 1925(b) concise statement. The trial court granted Appellant's motion on November 25, 2024. On January 24, 2025, Appellant, for the third time, requested an extension of time to file a Rule 1925(b) statement. The trial court did not rule on this motion, as the trial judge passed away. Thereafter, on February 3, 2025, the matter was transferred to another trial judge and, on February 6, 2025, the record was transmitted to this Court. Hence, Appellant never filed a Rule 1925(b) concise statement.

Ordinarily, the "failure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in automatic waiver of the issues raised." **Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 224 (Pa. Super. 2014) (*en banc*) (citation omitted); **see also Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005) (explaining that an untimely concise statement waives all claims on appeal); **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) ("[F]rom this date forward ... [a]ppellants must comply whenever the trial court orders them to file a [s]tatement of [errors] [c]omplained of on [a]ppeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived.").

Importantly, however, Rule 1925(c)(3) of the Pennsylvania Rules of Appellate Procedure states:

> If an appellant represented by counsel in a criminal case was ordered to file and serve a [concise s]tatement and either failed to do so, or untimely filed or served a [concise s]tatement, such that the appellate court is convinced that counsel has been *per se* ineffective, and the trial court did not file an opinion, the appellate court may remand for appointment of new counsel, the filing or service of a [concise s]tatement *nunc pro tunc*, and the preparation and filing of an opinion by the judge.

*(Footnote Continued Next Page)*

Appellant raises the following issues for our consideration:

1. Whether the trial court abused its discretion and/or erred as a matter of law by prohibiting defense counsel from confronting the [Victim] with recorded jail visits of [her] and Appellant having sexual interactions?

2. Whether the trial court abused its discretion and/or erred as a matter of law by not allowing trial counsel to confront the [Victim] who testified that she had been brutally raped . . . when there was [extensive evidence showing] that the [V]ictim consented to various sexual acts when she was conscious?

3. Whether the trial court abused its discretion and/or erred as a matter of law by violating the best evidence rule [and allowing the Victim and Mr. Dukes to testify about the video depicting Appellant's sexual assault on the Victim's unconscious person even though] the [V]ictim intentionally deleted the video, the key piece of evidence?

4. Whether the sentencing court abused its discretion by allowing the prosecutor to argue, *ad nauseum*, that [Appellant] may have committed a murder, despite the fact that there was no conviction?

5. Whether the sentence of 10 to 20 years of incarceration exceeded the maximum sentence allowed by law for the

---

Pa.R.A.P. 1925(c)(3); *see Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*) (declining to find the appellant's claims waived on appeal in view of Pa.R.A.P. 1925(c)(3)).

In this instance, we determine that Appellant's counsel, by failing to file a 1925(b) statement, was *per se* ineffective. We, however, decline to remand this matter for the preparation of a trial court opinion and will address the merits of Appellant's claims because, as previously stated, the trial judge in this matter is deceased. *See Commonwealth v. Andrews*, 213 A.3d 1004, 1010 (Pa. Super. 2019) (declining to find the appellant's claims waived pursuant to Pa.R.A.P. 1925(c)(3) and declining to remand to the trial court because the trial court addressed the issues raised in the appellant's untimely 1925(b) statement).

charge of aggravated indecent assault on an unconscious person, a felony of the second degree?

Appellant's Brief at 7-8.

In his first and second appellate issues, Appellant challenges the trial court's prohibition of certain evidence under the Rape Shield Law, 18 Pa.C.S.A. § 3104. In his first issue, Appellant argues that the trial court erred in prohibiting him from confronting the Victim with audio recorded evidence of jail visits between Appellant and the Victim, after the relevant assault, that depicted the Victim and Appellant masturbating together. In Appellant's view, evidence of these "consensual sexual interactions[s]" was necessary to rebut the Victim's claims "of fear, coercion, and non-consensual sexual activity" and, in turn, attack the Victim's credibility. Appellant's Brief at 20 and 26. In his second issue, Appellant similarly claims that the trial court erred in prohibiting him from confronting the Victim "with recorded evidence of consent and/or presenting a defense of consent." *Id.* at 29. In Appellant's view, he "should have been able to present evidence suggesting that[, at the time of the alleged sexual assault,] the Victim was, in fact, conscious and consenting and/or previously consented to the act." *Id.* at 30. We will address these related claims together.

We note:

> A trial court's ruling on the admissibility of evidence of the sexual history of a sexual abuse complainant will be reversed only where there has been a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of

partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

***Commonwealth v. Allburn***, 721 A.2d 363, 366 (Pa. Super. 1998) (internal citations and quotation marks omitted).

The Rape Shield Law, 18 Pa.C.S.A. § 3104, "prohibits the introduction of evidence relating to the victim's sexual history, including conduct and reputation." ***Commonwealth v. Fink***, 791 A.2d 1235, 1240 (Pa. Super. 2002) (footnotes and parallel citations omitted). It states, in relevant part, as follows:

> **General rule**.—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in the prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.
>
> **(b) Evidentiary proceedings**.--A defendant who proposes to offer evidence of the alleged victim's past sexual conduct, past sexual victimization, allegations of past sexual victimization, opinion evidence of the alleged victim's past sexual conduct and reputation evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S.A. § 3104(a) and (b).

This Court previously summarized the contours of the Rape Shield Law as follows:

[T]he Rape Shield Law bars prior instances of sexual conduct except those with the defendant **where consent of the victim is at issue** and the evidence is otherwise admissible.

Our Supreme Court addressed the type of evidence that is admissible under the Rape Shield Law in **Commonwealth v. Johnson**, 638 A.2d 940 (Pa. 1994), **Commonwealth v. Spiewak**, 617 A.2d 696 (Pa. 1992) and **Commonwealth v. Durst**, 559 A.2d 504 (Pa. 1989). The **Johnson** Court held that the statutory word "conduct" does not include prior sexual assaults and that evidence of prior sexual assaults is admissible as long as such evidence is relevant and material under the traditional rules of evidence. **Johnson**, 638 A.2d at 942. The **Spiewak** Court held that evidence that is highly probative of a victim's credibility is admissible in order to allow the jury to make a fair determination of guilt or innocence. **Spiewak**, 617 A.2d at 702. The **Durst** Court held that evidence that someone else in addition to the defendant may have had sexual contact with the victim does not exonerate the defendant. **Durst**, 559 A.2d at 506.

Our Court has likewise addressed the Rape Shield Law in **Commonwealth v. Black**, 487 A.2d 396 (Pa. Super. 1985), **Commonwealth v. Allburn**, **supra**, and **Commonwealth v. Appenzeller**, 565 A.2d 170 (Pa. Super. 1989).

In **Black**, our Court held that the Rape Shield Law permitted admission of evidence of the victim's prior sexual activity on the issue of her bias against the defendant, provided that a three-part test was met at an in[-]camera hearing similar to that outlined in 18 Pa.C.S.A. § 3104(b). Specifically, the trial court is to determine: (1) whether the proposed evidence is relevant to show bias or motive or to attack credibility; (2) whether the probative value of the evidence outweighs its prejudicial effect; and (3) whether there are alternative means of proving bias or motive or to challenge credibility. **Black**, 487 A.2d at 401.

The **Allburn** Court held that evidence of a victim's prior sexual activity is not admissible under the Rape Shield Law where the offer of proof showed only prior sexual conduct by the victim with others in addition to the defendant, but did not show how the evidence would exonerate the defendant. **Allburn**, 721 A.2d at 368. The **Appenzeller** Court held that evidence of a prior sexual assault by another man is not admissible to show

- 9 -

knowledge by the child victim of sexual techniques or nomenclature. *Appenzeller*, 565 A.2d at 171.

Finally, our Court has made clear that proffers under the Rape Shield Law must not be vague or conjectural. *Commonwealth v. Fernsler*, 715 A.2d 435 (Pa. Super. 1998)[; *see also*, *Commonwealth v. Guy*, 686 A.2d 397 (Pa. Super. 1996); *Commonwealth v. Wall*, 606 A.2d 449 (Pa. Super. 1992).

To summarize:

  • The Rape Shield Law bars prior instances of sexual conduct, except those with the defendant **where consent of the victim is at issue and the evidence is otherwise admissible**. 18 Pa.C.S.A. § 3104(a).

  • If the prior sexual conduct was a prior sexual assault, then the Rape Shield Law does not apply and the evidence is evaluated under the general evidentiary rules. *Johnson*.

  • If the prior sexual conduct does not involve the defendant or involves the defendant but consent is not an issue, then it must be relevant to show bias against the defendant or to attack the credibility of the victim. *Black*. A three-part test for admissibility applies in such a case. *Id.*

  • If the offer of proof shows only that others in addition to the defendant had sexual contact with the victim, but does not show how the evidence would exonerate the defendant, evidence of prior sexual activity is inadmissible under the Rape Shield Law. *Durst*; *Allburn*.

  • Evidence of a prior sexual assault by another man is not admissible to show knowledge by the child victim of sexual techniques or nomenclature unless the evidence exonerates the defendant. *Durst*; *Appenzeller*.

  • Proffers under the Rape Shield Law [cannot] be vague, conjectural, or speculative. *Fernsler*.

- 10 -

*Fink*, 791 A.2d at 1240–1243 (Pa. Super. 2002) (emphasis in original) (footnotes and parallel citations omitted).

The certified record reveals the following facts relevant to Appellant's claims of error. On January 23, 2022, the Commonwealth filed a motion *in limine* seeking to exclude a consent defense. In the motion, the Commonwealth noted that Appellant was charged with, *inter alia*, rape – person unconscious, IDSI – person unconscious, aggravated indecent assault – person unconscious, and indecent assault – person unconscious. In the Commonwealth's view, "[e]vidence and argument in support of a consent defense should be excluded at trial . . . because consent is no defense to sexual offenses involving an unconscious victim." Commonwealth's Motion *in Limine*, 1/23/22, at 3, *citing* **Commonwealth v. Brown**, 727 A.2d 541, 544 (Pa. 1999) (holding that "consent is not a defense to the charges of [r]ape and/or IDSI with an unconscious person."). That same day, the Commonwealth also filed notice of its intent to present evidence of other crimes, wrongs, or acts pursuant to Pa.R.E. 404(b). In its notice, the Commonwealth revealed its intent to introduce the following evidence:

> [T]he Commonwealth intends to offer evidence tending to prove that:
>
>> (a) [Appellant] physically abused the [V]ictim when they were in an intimate relationship prior to his 11-year prison sentence in Ohio;
>>
>> (b) The [V]ictim is aware of [Appellant's] violent criminal history;
>>
>> (c) Following [Appellant's] release from Ohio state prison, the [V]ictim was coerced into a physically and

- 11 -

psychologically abusive sexual relationship with [Appellant]; and

(d) [Appellant] was incarcerated at the Allegheny County Jail on unrelated charges in June 2015, during which time he continued to coerce and threaten the [V]ictim.

Commonwealth's Notice, 1/23/22, at ¶ 6.  It does not appear that the trial court issued a ruling on either of the Commonwealth's motions.

Before trial, defense counsel revealed his intent to introduce into evidence audio recordings of the Victim and Appellant "masturbating together over the [tele]phone and during jail visits."  Appellant's Brief at 27.  The parties discussed defense counsel's proposed evidence, as well as the Commonwealth's outstanding motions, on the record.  The relevant exchange is as follows:

> **[The Commonwealth]:**  Your Honor, the Commonwealth raises this issue this morning related to evidence of the [V]ictim's past sexual conduct.  It is the position of the Commonwealth that the [d]efense may not introduce evidence related to any sexual conduct of the [V]ictim in this case . . . either with [Appellant] or any other person during trial.  As is dictated under Section 3104 of the Pennsylvania Code, specifically Section A, dictates that evidence of specific instances of the alleged victim's past sexual conduct, among other aspects related to the victim's past sexual conduct, shall not be admissible in prosecutions of offenses under .. . Chapter 31 of the Pennsylvania Code except evidence of the victim's past sexual conduct with the [d]efendant where consent of the alleged victim is at issue.  And such evidence is otherwise admissible under the rules of evidence.
>
> **The court:**  Well, isn't consent at issue if the jury needs to determine, as a threshold matter, that [the Victim] was unconscious?

**[The Commonwealth]:** Your Honor, it's the Commonwealth's position that consent is not at issue where the [d]efendant is charged with Chapter 31 offenses [against] an unconscious victim.

**The court:** Well . . . [w]hether or not the victim is unconscious is a factual determination to be made by the jury.

**[The Commonwealth]:** Correct. And if the jury finds that the [V]ictim was not unconscious at the time of these offenses, they should find [Appellant] not guilty because the Commonwealth will have failed to have proven one of the elements of the offense. But consent is not at issue. It is not a defense to any of the crimes under Chapter 31 with which [Appellant] is charged. And if the [d]efense wishes to pierce this prohibition, they are required to . . . file a written motion and offer of proof at the time of trial. The [c]ourt shall determine [if] that motion and offer of proof are sufficient on their faces, and shall order an in-*camera* hearing and make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standard set forth in Section A.

**The court:** So let me ask you this. You're saying that because the Commonwealth has charged [Appellant] with rape of an unconscious victim, we cannot talk about consent?

**[The Commonwealth]:** Consent is not relevant.

**The court:** Even if the jury determines that in fact [the Victim] was unconscious?

*** 

**The court:** I mean, you're saying that the threshold determination of consciousness has already been made and left by the prosecution, and the [d]efense has absolutely no opportunity to rebut that. … What happens if [Appellant] gets on the stand, and said, we spoke the night before and she said, I'm whatever. And there is evidence that we consented and she consented to the fact that the next day or the next night she was going to take pills, she was going to do exactly as she had done in the past, and that you have all the consent in the world to do whatever you want to me. Why is that not relevant? Just because the Commonwealth has charged [Appellant] with rape of an unconscious victim and taken away his opportunity to raise that as a factual issue? I don't think so.

- 13 -

\*\*\*

[**The Commonwealth**]: Well, as stated in the Commonwealth's motion *in limine*, the reason that consent is not a valid defense to these type of charges is laid out within the law specifically in light of the fact that Pennsylvania law recognizes a victim's ability to withdraw their consent at any time during a sexual interaction with another person. And the fact that they are – that an individual is unconscious, takes away that right.

**The court:** But hang on a second. Once again, the Commonwealth is telling this [c]ourt that we are to assume, and I'm to tell the jury, she was unconscious. That precludes [Appellant from] getting on the stand and saying, the hell she was unconscious. The video is gone. She's a lying sack of you know what. She was conscious. She gave permission. Why – regardless [of] whether or not that's credible or incredible, he has the right to do that. And then it becomes a question of fact for the jury to decide whether [Appellant] is telling the truth or whether [the Victim] is telling the truth because by the way the video has gone not as a result of conduct by the proponent, which I'm taking as the Commonwealth, but certainly as a result of the conduct of the [V]ictim[.]

\*\*\*

**[The Commonwealth]:** Regardless of that, Your Honor, it is the [d]efense's burden to file a written proffer that specifies exactly what it is . . . that the [d]efense intends to present at trial, and the legitimate reason that they should be permitted to do so. … [Prior case law] specifically states that a defendant wishing to introduce evidence of a victim's prior sexual conduct that falls within an exception to the [R]ape [S]hield [L]aw must make a specific proffer to the [c]ourt. And the evidence must be determined by the [c]ourt to exculpate the accused, [be] more probative than prejudicial, and non[-]cumulative in nature in order for it to be admissible at trial. The [d]efense has failed to do that[.]

\*\*\*

**The court:** Look, the issue of whether or not they file a motion can be taken care of this afternoon, pre-trial. So I'm not necessarily worried about that. But for the Commonwealth to come in here[] and tell the [d]efense what they can and they

- 14 -

cannot put on because it doesn't suit their case is a little hard to, you know, deal with.

**[The Commonwealth]:** Your Honor, I'm . . . simply saying that this evidence would be – the purpose of the [R]ape [S]hield [L]aw as stated in the case that I just cited to is specifically to prevent trial from shifting its focus . . . from the culpability of the accused toward the virtue and chastity of the victim, and also intended to exclude irrelevant and abuse inquiries regarding prior sexual conduct of sexual assault complainants. And that's the reason the Commonwealth is raising this prior to trial, that the [V]ictim should not be subjected to cross-examination about sexual conduct that is . . . beyond the charged incident.

**The court:** Well, I think that the motion *in limine* – your [Rule] 404(b) motion was to counteract the [d]efense argument that she didn't go to the police for six or eight months or nine months because she was terrified.

**[The Commonwealth]:** Correct, Your Honor.

**The court:** So how, if you don't use those prior bad acts, do they ever come out, and say why she never went to the police for eight months? Because she wasn't scared. Because you're going to say she was scared as an argument as to why there wasn't a prompt reporting, right?

**[The Commonwealth]:** Yes, Your Honor.

\*\*\*

**The court:** And so what's their rebuttal then[?]

**[The Commonwealth]:** They are not permitted by statute to introduce . . . evidence of her prior sexual conduct in their cross-examination of her. [I]t explicitly states that they are not permitted to introduce this evidence unless prior to trial the [c]ourt determines that it's relevant and admissible.

**The court:** Well, they're going to file something this afternoon on that issue to satisfy the statute requirement that they file a pre[-]trial motion with an offer of proof. But, I mean, I just don't know how [the Commonwealth] can come in . . . and say, you know what . . . their defense is going to be, you know, well, why didn't she go to the police? Well, she didn't go to the police because she was terrified. And now the [d]efense's hands are

- 15 -

bound because they can't say, no, no, no, no. She wasn't terrified. Here are all the tapes to prove to you that she wasn't terrified. They were masturbating on the [tele]phone and doing A, B, C, and D, and whooping it up on the jail calls and jail visits. How do you rebut that?

**[The Commonwealth]:** Your Honor there are many, many ways that the [d]efense can [] raise that issue through the jail calls and visits that do not involve introducing past sexual conduct of the victim[.]

\*\*\*

**The court:** But doesn't the past sexual conduct go to consent?

**[The Commonwealth]:** But consent is not at issue.

\*\*\*

**The court:** You know, I mean, . . . I'll go into this this afternoon myself. But you're saying, [District Attorney] charges rape of an unconscious victim. Mr. Jury and Mrs. Jury, you are to assume that she was unconscious regardless of whether [Appellant] gets up and said we had a long conversation, okay, regardless of whether [the Victim] said, I destroyed the tape. Yes, she destroyed the tape because she didn't want everybody to see on the jury that in fact she gave consent.

But you're precluding them from doing that because the [District Attorney] in their astute wisdom decided if we charge rape of an unconscious victim, the idea of unconsciousness is a given. [Ergo, consent's not a defense.]

**[The Commonwealth]:** This is not some calculated plan by the Commonwealth to charge [Appellant] specifically with crimes that would prevent him from introducing evidence of the sexual relationship between [him] and the [Victim]. This rule is in place for a reason; it is to protect victims specifically in [the Victim's] circumstances. Such that she should not be interrogated about her private sexual decisions. It's not relevant and it's inadmissible and it's abusive to the [V]ictim while she's testifying.

**The court:** She's not going to get interrogated I would assume on prior sexual conduct with [Appellant] outside of the jail tapes and jail visits; am I correct?

- 16 -

**[Defense counsel]:** Correct. There is one incident – we'll address this now where the Commonwealth's alleging that [the Victim] was terrified of [Appellant] the first time he went to jail. [H]e comes out of jail, seeks him out, who she's terrified of, seeks him out and meets up with him and has consensual sex with him.

**The court:** Is this before the jail tapes or after the visits?

**[Defense counsel]:** Yes.

**The court:** Well, I mean, I don't think that that's relevant.

**[Defense counsel]:** Okay.

**The court:** … Your argument is to counteract the Commonwealth's position that there was eight months before she reported this because she was terrified of [Appellant]. Your argument is that during those eight months, when she was allegedly terrified, she had these jail visits and jail calls. You, members of the jury, decide whether or not she was terrified. And then you decide whether the late reporting is an issue or not.

**[Defense counsel]:** Exactly.

**The court:** But outside of the jail calls and jail visits, I don't want to hear about a prior sexual relation.

\*\*\*

**The court:** I'm going to look into this afternoon this rape shield issue. But I do think – and maybe I am completely wrong, which is highly possible. … The idea of whether or not [the Victim] was unconscious is a factual determination to be made by a jury. And my charge to the jury is that if you find she was unconscious, and any idea of consent is not a defense, but that's your determination to make.

And I don't think that I as a trial judge can tell [Appellant] that he can't get up on this stand and say she wasn't unconscious. She told me let's do it like we've done the past 10 times before; why is that not relevant?

**[The Commonwealth]:** He can't say the part about the past 10 times. He simply can't. He is prohibited by statute.

> **The court:** He can testify that during the night in question she gave consent in what she said.
>
> **[The Commonwealth]:** Sure. Yeah, he can say anything he wants when he gets on the stand, I suppose, other than speaking to her prior [] sexual conduct with him because consent is not an issue.
>
> **The court:** If they determine that she was unconscious, if he provides testimony in his case either by himself or through witnesses that she wasn't unconscious, then the issue of whether or not consent comes in, depending on what the jury finds on that issue. All right.

N.T. Trial, 12/2023, at 57-77.

Thereafter, Appellant filed a motion pursuant to 18 Pa.C.S.A. § 3104(b). In his motion, Appellant contended that, in the Commonwealth's notice of intent to present evidence of other crimes, wrongs, or acts pursuant to Pa.R.E. 404(b), it "clearly said that it was going to show the sexual history of the Victim and [Appellant] to prove intimidation and coercion." Appellant's Motion, 12/6/23, at ¶ 7. Based upon the foregoing, Appellant revealed his intent to present the audio recordings of the Victim's and Appellant's mutual masturbation during multiple jail visits. *See id.* at ¶ 20. Appellant stated that he intended to introduce such evidence "to show a possible bias against [Appellant]" and also to demonstrate that "the current allegation was fabricated." *Id.* at ¶ 25. Appellant, however, indicated that he did not "intend to present evidence of prior sexual conduct with the Victim to support a consent defense." *Id.* at ¶ 21.

The next day, the trial court convened an in-*camera* hearing pursuant to 18 Pa.C.S.A. § 3104(b). At the outset of the hearing, the trial court stated:

Let me just say at the outset that I have spent a significant amount of time going over the case law which I have not read until [it] was given to me by [the Commonwealth]. And in addition to that I reviewed other case law. And [c]ounsel can correct me if I'm wrong, but none of the case law I saw or read dealt with consent with respect to an unconscious victim. And I assume that that's because [the Commonwealth] is right that with respect to an unconscious victim[,] consent is not a defense. And so the rape shield – so if consent's not an issue, then the rape shield rule will not be pierced[.]

\*\*\*

And in [Appellant's] motion, specifically, [p]aragraph 21 [he] indicate[s] that [he] does not intend to present evidence of prior sexual conduct with the [V]ictim to support a consent defense. If, -- well, that being the case, I'm not sure why the rape shield act is even applicable other than to pierce it to show bias or to exculpate [Appellant] from the actual charge and the act itself. Having said that, I'm not quite sure what the proffer is with respect to [d]efense's request to introduce prior sexual relations with the [V]ictim if consent is not an issue.

N.T. Trial, 12/2023, at 100-101. The court then asked defense counsel what evidence, specifically, it intended to offer at trial. Defense counsel stated:

Our proffer basically – we have talked and [intend to] counteract the Commonwealth's [Rule] 404(b) motion where they're going to introduce evidence of why [the Victim] continued to go to jail and visit [Appellant]. They claim because of all of his prior bad acts she was threatened and felt she had to go to jail. And we are going to rebut that with [recordings of] numerous jail visits [depicting] the two of them masturbating amongst other things, saying I love you, and all sorts of [other things].

*Id.* at 102-103.

Ultimately, the trial court set forth its ruling as follows:

All right. Well, here's the deal. If [the Commonwealth] . . . raise[s] the issue that she was terrified[,] I think they have an opportunity to come back and introduce that evidence because

- 19 -

I think that that goes to her credibility specifically as to her testimony that I'm going to anticipate is I was terrified of him. You filed the [Rule] 404(b) motion. And they, I think, have the right to come back and say no, you weren't. No, you weren't. You went to the jail and you masturbated. And you did A, B, C, D, E, F, G. So that is, I think, opening the door to that kind of testimony or to that testimony, rather.

But I'm not going to allow evidence of prior sexual conduct with [Appellant] before he went to the Allegheny County Jail because consent is not an issue. Whether or not relevance is an issue, whether or not the probative value of whatever they want to introduce outweighs the prejudicial effect, whether there's an alternative means of proving bias or motive to challenge credibility, and whether or not it's cumulative, I'm going to have to wait and see. But right now, [] my feeling is that any testimony regarding her relationship with [Appellant] at the county jail is relevant to her credibility if she comes in here and says I only went there because I was terrified of him.

*Id.* at 120-121. Thus, the trial court determined that, if the Commonwealth introduced evidence that the Victim was terrified of Appellant, the defense would be permitted to explore the Victim's jail visits with Appellant and their engagement in mutual masturbation during those visits to show that she was not terrified of Appellant. In addition, the trial court held that, if the Commonwealth introduced evidence that Appellant and the Victim had a prior physically abusive sexual relationship, the defense may introduce such evidence to demonstrate consent. *See id.* at 131-132 (trial court indicating its openness to allow the defense to introduce evidence that the Victim "agreed to everything" if the Commonwealth "opens the door" by introducing evidence of a "physically abusive sexual relationship.").

The matter then proceeded to trial and the Victim testified. In her testimony, the Victim indicated, *inter alia*, that she was terrified of Appellant

- 20 -

and, in general, engaged in a relationship with him out of fear. In addition, during one exchange, the Victim referenced prior acts of physical and sexual violence committed against her by Appellant while he lived with her in 2015. The relevant exchange is as follows:

> **[The Commonwealth]:** Okay. And what exactly changed about your living arrangements inside your home after [Appellant] stated his intention to stay with you all?
>
> **[The Victim]:** Everything changed. I mean, I was terrified. I mean, he locked me in a room, said we were in jail. I couldn't eat certain things, couldn't wear no clothes, couldn't go out the room, putting his hands on me, threatening me with guns, pulled out a gun on me, chocked me until I was almost unconscious, both of my eyes black, making me have sex with him, and then telling me go have sex with him.

N.T. Trial, 12/2023, at 209.

After the Victim's testimony, defense counsel contended that the Victim "kicked open the door" by referencing a "sexually coerced relationship." Accordingly, defense counsel argued that the defense should be permitted to introduce evidence of the Victim's prior sexual conduct. *Id.* at 225. Then, the following exchange occurred.

> **The court:** Well, I don't think it makes any difference. I think that she came close to opening the door. But I think that she didn't say anything that had anything to do with the two of them performing sexual acts that are consistent with the sexual act that is on trial in this matter. So they were in an intimate relationship, it was an abusive relationship, he made her have sex. I don't think it opened the door.
>
> ***
>
> And quite frankly the idea – the issue that you raised that she testified that he forced her to have sex with him is inconsistent

- 21 -

with the [consent] defense that we always did it this way and that was consensual sex.

*Id.* at 226.

Thereafter, defense counsel proceeded to cross-examine the Victim. The following exchanges are relevant to Appellant's claim on appeal. Initially, defense counsel attempted to inquire into whether, as the Victim previously indicated, Appellant ever engaged in sexual relations with her *via* force. *Id.* at 330. The Commonwealth objected to this line of questioning and the trial court sustained the Commonwealth's objection, indicating that defense counsel was not permitted to "deal[] with a prior sexual relationship with [Appellant]." *Id.* In addition, defense counsel probed the Victim about her claims that she was terrified of Appellant. Defense counsel questioned the Victim as to why, if her fear of Appellant was genuine, she would continue to visit Appellant and/or answer his telephone calls after he went to jail. At that point, defense counsel revealed his intention of playing the audio recording that occurred on October 30, 2015, where the Victim and Appellant engaged in mutual masturbation. *Id.* at 354. The following exchange then occurred:

**The court:** Well, why don't you just ask her whether she masturbated with [Appellant] – no, you can't play the tape.

**[Defense counsel]:** Okay.

**The court**: I'm not quite – I'm not going to get involved. Go ahead. I mean, I think that the reason that the tapes came in were – from the Commonwealth [] anticipating a defense of late reporting; it didn't happen. I think in order to – I think the prejudicial value outweighs the probative value. And I think you can pose it to her – she didn't go to the jail and masturbate, if she says no, play the tape.

**[Defense counsel]:** Okay.

**The court:** And I'm not quite sure why it's relevant.

**[The Commonwealth]:** Your Honor, I object to the question even being asked because it is sexual behavior that is barred under [Section] 3104.

**The court:** Well, its sexual behavior – what it goes to is you spend a lot of time on direct showing how scared she was of him. She's already explained, with all due respect, to [d]efense why she did all these so-called nice things. This is just another –

**[The Commonwealth]:** Another thing.

**The court:** Yeah.

*** 

**[The Commonwealth]:** I think it's being used to humiliate her. It is very clear.

**The court:** Well, you can – I think what I'm going to allow you to do – you can ask her whether she masturbated. If she says yes, you can ask her why she masturbated if she was so scared, and then move on.

*Id.* at 354-356. Defense counsel proceeded to ask the Victim the following question:

> Ma'am, when you would go to visit [Appellant] in the jail, which you stated many times you did because you were terrified, isn't it true you would go down there and masturbated with him?

*Id.* at 359. The Victim responded in the affirmative. *Id.* Then, defense counsel proceeded to ask the Victim about additional details regarding the Victim's and Appellant's sexual behavior when the Victim visited Appellant at the Allegheny County Jail. *See id.* at 359-361. During his testimony,

Appellant also discussed the parties' behavior when the Victim visited him at the Allegheny County Jail. *See id.* at 715-717.

We now turn to Appellant's first claim of error in which he alleges that the trial court abused its discretion in prohibiting him from introducing the audio recordings of the jail house visits that depicted the Victim and Appellant engaging in mutual masturbation because they were relevant to the Victim's credibility.

We discern no abuse of discretion on the part of the trial court. As indicated above, the trial court determined, pursuant to *Black*, that such evidence was relevant to attack the Victim's credibility, namely, her allegation that she was terrified of Appellant. *Black*, 487 A.2d at 401. The trial court, however, also determined that the prejudicial effect of the audio recordings outweighed their probative value. *See* N.T. Trial, 12/2023, at 356-358; *see also* Pa.R.E. 403 ("The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). In addition, the trial court provided defense counsel with an "alternative means" of challenging the Victim's credibility. *Black*, 487 A.2d at 401. In particular, the trial court allowed Appellant to specifically ask the Victim whether, during her visits to the Allegheny County Jail, she masturbated with Appellant, to which the Victim responded in the affirmative. *See* N.T. Trial, 12/2023, at 359-361. The trial court then allowed Appellant to ask additional questions regarding

the sexual behavior of the Victim and Appellant during the jail visits. ***See id.*** Finally, the trial court permitted Appellant to discuss the parties' sexual behavior during his testimony. ***See id.*** at 715-717. In so doing, the trial court honored Appellant's right to attack the Victim's credibility while, at the time, astutely avoided encroaching upon Rape Shield Law protections. ***Commonwealth v. Nieves***, 582 A.2d 341, 347 (Pa. Super. 1990) ("[T]he Rape Shield law will bow to a defendant's right to confront and cross-examine when a specific proffer demonstrates that the proposed inquiry is intended to elicit relevant evidence, which is more probative than prejudicial, and which is not cumulative of other evidence available without encroaching upon Rape Shield law protections."). Hence, Appellant's first claim fails.

We now turn to Appellant's claim that the trial court abused its discretion in prohibiting him from introducing evidence of the Victim's past sexual behavior to demonstrate the Victim's consent or, alternatively, from otherwise pursuing a consent defense in this matter.

Appellant's claim lacks merit. Initially, we note that Appellant was charged and convicted of, *inter alia*, rape of an unconscious person. As such, the trial court correctly determined that, under the case law promulgated throughout this Commonwealth, an unconscious person is "unable to consent because of their physical condition." ***Commonwealth v. Price***, 616 A.2d 681, 684 (Pa. Super. 1992); ***see also Commonwealth v. Banniger***, 303 A.3d 1085, 1093 (Pa. Super. 2023) ("[P]roof that a defendant had intercourse with an unconscious victim implies that a victim did not consent."). Because

an unconscious person, by definition, cannot consent, we agree with the trial court's initial assessment that the presentation of evidence for this purpose was wholly irrelevant.

We, however, believe it is prudent to note that, on appeal, Appellant only identifies one piece of evidence that the trial court prohibited him from introducing that was allegedly indicative of consent: the jail house recordings depicting the Victim and Appellant engaging in mutual masturbation.[4]  **See** Appellant's Brief at 31 (stating that evidence of the jail visits between the Victim and Appellant during which "they also masturbated together . . . demonstrate[ed] that the relationship included ongoing, mutual sexual behaviors" that "was highly probative evidence that the alleged [V]ictim had previously consented to sexual acts.").  We further conclude Appellant's claim of error with regard to the trial court's alleged prohibition is problematic for multiple reasons.

First, in Appellant's motion filed pursuant to 18 Pa.C.S.A. § 3104(b), Appellant specifically stated that he did not "intend" to present the evidence of the jail house audio recordings "to support a consent defense."  **Id.** at ¶

---

[4] On appeal, Appellant references another audio recording in which the Victim and Appellant "are laughing about a 'stranger danger' fantasy."  Appellant's Brief at 31.  This audio recording was admitted by the Commonwealth during Appellant's trial.  **See** N.T. 12/7/23, at 282.  At trial, the Victim identified the term "stranger danger" as referring to the "things [Appellant] had done to me when I was asleep." **Id.** at 284.  Appellant, on the other hand, contended that the term "stranger danger" referred to "sexual acts that would be freaky sex." **Id.** at 720.  Because this audio recording was introduced into evidence at Appellant's trial, it cannot serve as a basis for Appellant's claim of error.

21. The trial relied upon Appellant's averment during the in-*camera* hearing. *See* N.T. Trial, 12/2023, at 100-101 (the trial court noting that in "[Appellant's' motion, specifically, [p]aragraph 21 [he] indicate[s] that [he] does not intend to present evidence of prior sexual conduct with the [V]ictim to support a consent defense. If, -- well, that being the case, I'm not su*re* why the rape shield act is even applicable other than to pierce it to show bias or to exculpate [Appellant] from the actual charge and the act itself."). Appellant's current claim on appeal, therefore, is subject to waiver. *See* Pa.R.A.P. 302 ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.")

Second, even if we construe Appellant's claim as preserved for our review, it still fails because Appellant did not submit a proffer to the trial court explaining, with specificity, how the audio recordings of the jail visits between the Victim and Appellant provided evidentiary support for his contention that Victim consented to having sexual relations with Appellant while in an unconscious state. *See Fink*, 791 A.2d 1242 (demanding that "[p]roffers under the Rape Shield Law must not be vague or conjectural"). To the contrary, Appellant simply contended that the audio recordings depicted the Victim and Appellant engaging in mutual masturbation. *See id.* 359-361. Appellant never claimed that the audio recordings contained the Victim's supposed prior consent. Hence, the trial court cannot be said to have abused its discretion in preventing Appellant from pursuing such a vague and elusive theory during trial.

Finally, we note that, during trial, Appellant defended against the instant action by claiming that the assault never occurred. More specifically, Appellant, claimed that he lied to the Victim about assaulting her while she was unconscious and also lied to the Victim about videotaping the assault. The relevant portion of Appellant's testimony is as follows:

> **[Defense counsel]:** [Why did you claim to have had sexual intercourse with the Victim while she was asleep?]
>
> **[Appellant]:** Now, I'm glad you asked me that.
>
> **[Defense counsel]:** Okay.
>
> **[Appellant]:** The reason why I said that to her was because I was trying to convince [the Victim] that if you're on these drugs, if you're nodded out on these pills, if you don't know what's going on around you, anything could happen. It's something that I made up. I know this shit was stupid to say.
>
> But at the end of the day I was incarcerated. I was trying to convince her not to take the medication. I had no other means of really convincing her of anything. So I made that up trying to convince her that these things could've happened and you don't remember it, then you don't need to be taking these drugs. So that's the reason why I said it in the first place.
>
> ***
>
> **[Defense counsel]:** Did you ever make a video having sex with [the Victim] while she was unconscious?
>
> **[Appellant]:** No, there was no video. That's what I'm trying to tell ya'll. They tried to hinge on the fact that I said it verbally and tried to lend some truth to it by saying there was a video.
>
> ***
>
> **[Defense counsel]:** Did you ever have sex with [the Victim] while she was unconscious?
>
> **[Appellant]:** No.
>
> **[Defense counsel]:** Did you ever rape [the Victim]?

**[Appellant]:** No.

***Id.*** at 720-724.  A consent defense, therefore, would be entirely inconsistent with Appellant's statements.  Based upon all of the foregoing, Appellant's claim fails.

In his third issue, Appellant argues that the trial court erred in admitting testimony from the Victim and Mr. Dukes describing the video recording of the sexual assault.  Appellant claims the trial court should have excluded this testimony under the best evidence rule because the Victim intentionally destroyed the video and the Commonwealth did not demonstrate that the Victim did not act in bad faith in doing so.  We disagree.

The best evidence rule provides:

### Rule 1002. Requirement of the Original

An original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise.

Pa.R.E. 1002.  "'Writings and recordings' under Rule 1002 include, *inter alia*, electronic recordings and other forms of data compilation."  ***Commonwealth v. Dent***, 837 A.2d 571, 589 (Pa. Super. 2003) (citation omitted).

There are times, however, when an original writing or recording is not required.  In particular, Rule 1004 provides, in relevant part, as follows:

An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if:

(a) all the originals are lost or destroyed, and not by the proponent acting in bad faith[.]

Pa.R.E. 1004(a). Hence, "[i]f the originals are not available at trial in a criminal case, through no fault of the Commonwealth, secondary evidence is permissible." **Dent**, 837 A.2d at 589.

In rejecting Appellant's claim, the trial court herein noted that the Victim "was the individual who admitted to deleting the video off of [Appellant's cellular tele]phone." Trial Court Opinion, 2/7/22, at 5. In addition, the trial court determined that the Commonwealth diligently attempted to retrieve the video recording of the sexual assault. **See id.** at 5 (explaining that "the Commonwealth provided testimony which satisfied the burden to diligently search to recover the video. The Commonwealth presented testimony that after an extensive and thorough search in 2016 and again in 2021, the video [was unrecoverable]."). It is therefore undisputed that the video recording at issue was unavailable at trial despite the Commonwealth's noted effort to retrieve it.

The trial court, however, determined that the Victim did not delete the video recording in bad faith. We hold that the trial court's conclusion is supported by the record. Herein, the Victim expressly testified that she deleted the video record of the sexual assault because "she feared [Appellant] would publish the video on a public forum." **Id.** at 5; **see also** N.T. Hearing, 8/9/21, at 10 (Victim testifying that she erased the video recording because she "didn't know what [Appellant] would do with the video as far as internet-wise or anything like that."). The Victim also testified that she deleted the video recording immediately. **See id.** at 30 (Victim testifying that

she deleted the video immediately upon seeing it). Importantly, as the trial court pointed out, this occurred approximately nine months before the Victim reported the incident to the police. In light of the foregoing, we discern no abuse of discretion in the trial court's conclusion that the Victim's testimony regarding the deletion of the video recording did not demonstrate bad faith. *See* Trial Court Opinion, 2/7/22, at 5. In fact, our prior case law supports this conclusion. *See Tran v. Singleton*, 2022 WL 894053 *1, *4 (Pa. Super. 2022) (non-precedential decision) (holding that testimonial descriptions of the defendant's "course of conduct, which include[ed] forcing unwanted communications with [the plaintiff]" was admissible under Pa.R.E. 1004(a) because it was "obvious" that the plaintiff "deleted the messaging platform to cease receiving unwanted communication from [the defendant]."); *see also Commonwealth v. Beech*, 2021 WL 855941 *1, *4 (Pa. Super. 2021) (non-precedential decision) (holding that evidence of the victim's injuries was admissible because the victim "plausibl[y] explain[ed]" that she delated the photographs from her cellular telephone because she was afraid the defendant would go through her cellular telephone and view the pictures.). We therefore hold that the trial court did not abuse its discretion in permitting secondary evidence of the video recording of the sexual assault.

In his fourth issue, Appellant claims that the trial court erroneously allowed the Commonwealth, at Appellant's sentencing, to present evidence that Appellant previously committed murder, even though he was never charged or convicted of that offense. On this basis, Appellant further contends

that that the trial court was "improperly influenced" by the Commonwealth's assertions in fashioning his sentence. Appellant's Brief at 40.

"[A] claim [that] a sentencing court relied on impermissible factors in imposing a sentence presents a challenge to the discretionary aspects of a sentence." *Commonwealth v. Davis*, 341 A.3d 808, 812 (Pa. Super. 2025). This Court previously explained:

> It is well-settled that "the right to appeal a discretionary aspect of sentence is not absolute." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, where an appellant challenges the discretionary aspects of a sentence, we should regard his[, or her,] appeal as a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 162 (Pa. Super. 2007). As we stated in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):
>
>> An appellant challenging the discretionary aspects of his[, or her,] sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>>
>>> We conduct a four-part analysis to determine: (1) whether appellant [] filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> [*Moury*, 992 A.2d] at 170 [(citation omitted)]. We evaluate on a case-by-case basis whether a particular issue constitutes a substantial question about the appropriateness of sentence. *Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001).

*Commonwealth v. Hill*, 210 A.3d 1104, 1116 (Pa. Super. 2019) (original brackets omitted).

Here, Appellant satisfied the first two requirements of the above cited test. Appellant's notice of appeal was deemed timely filed and Appellant preserved the instant challenge in his post-sentence motion. Counsel for Appellant, however, failed to include a separate statement pursuant to Pa.R.A.P. 2119(f). Nonetheless, the Commonwealth did not object to his omission. *See Commonwealth v. Brougher*, 978 A.2d 373, 375 (Pa. Super. 2009) (holding that, even though defendant failed to include a Rule 2119(f) statement with respect to the discretionary aspects of a sentence in his brief, defendant's claims were not waived since the Commonwealth failed to object to the statement's absence). We, therefore, proceed to determine whether Appellant raised a substantial question.

We have explained:

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Moury*, 992 A.2d at 170 (internal citations and quotations omitted). "[T]his Court does not accept bald assertions of sentencing errors. An appellant must articulate the reasons the sentencing court's actions violated the sentencing code." *Id.* (internal citations omitted). This Court has held that a trial court's

- 33 -

alleged consideration of impermissible factors while issuing its sentence presents a substantial question. ***See Commonwealth v. King***, 182 A.3d 449, 454 (Pa. Super. 2018). Hence, we will review Appellant's claim.

In reviewing sentencing matters, we are mindful of our well-settled standard of review.

> Sentencing is a matter vested in the sound discretion of the [trial court], and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the [trial] court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill[-]will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Garcia-Rivera***, 983 A.2d 777, 780 (Pa. Super. 2009).

Appellate review of a trial court's sentencing determination is governed by Section 9781(c) of the Sentencing Code.

> Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the [trial] court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable."

***Bowen***, 975 A.2d at 1123, *citing* 42 Pa.C.S.A. § 9781(c).

This Court previously stated:

> The admissibility of evidence . . . rests with the sound discretion of the trial court. The conduct of a sentencing hearing differs from the trial of the case. To determine an appropriate penalty, the sentencing court may consider any evidence it deems relevant. While due process applies, the sentencing court is

neither bound by the same rules of evidence nor criminal procedure as it is in a criminal trial.

*King*, 182 A.3d at 455 (internal citations and quotations omitted). Hence, a trial judge maintains "[b]road discretion . . . to receive relevant information to make the determination of sentence." *Commonwealth v. Vernille*, 418 A.2d 713, 719 (Pa. Super. 1980). A trial court, however, cannot use "'previous other contacts' with the criminal legal system," *i.e.*, prior interactions with the criminal justice system like arrests that resulted in neither conviction nor adjudication, as a factor in fixing the defendant's sentence. *Commonwealth v. Berry*, 323 A.3d 641, 643 (Pa. 2024).

At sentencing, the Commonwealth admitted into evidence police reports related to an incident involving Appellant that occurred in May 2002. *See* N.T. Sentencing Hearing, 3/5/24, at 84. The Commonwealth detailed the contents of these reports as follows:

> [T]hat exhibit begins with a summation of [Appellant's] conduct during that incident. [The] Commonwealth provided this exhibit specifically because the pre[-]sentence report authored in 2024 was lacking in specific details as to the facts of that case. [Appellant], in this instance, lured a stranger to the home of a friend where he and an accomplice held [the stranger] at gunpoint, forced him to undress, hog tied him, and repeatedly told him that they would murder him if he did not provide them with money or drugs.
>
> At one point during this prolonged assault[, Appellant] placed this victim's head between two bricks, which had been placed on a plastic bag on the floor. He then threatened to smash the victim's head in with these bricks, and indicated to him that they had laid down the plastic bags in order to prevent damage to the floor. Subsequently, they forced [the victim] at gunpoint into a vehicle where they took him to another individual's residence, where the victim was going to attempt to obtain cash

to appease [Appellant] and his accomplice. And they then attacked those individuals as well. Luckily, the primary victim of the kidnapping charge, he was able to escape at that time, and alert authorities to what was transpiring.

I would note also that those reports indicate that [Appellant] stated to his accomplice during this incident that he had killed someone in the past. Now, whether or not that was posturing, we can't know. But the pre[-]sentence report from 2000 indicates that a corpse was located in the basement of [Appellant's] mother's business address, that a witness came forward and indicated that a body would be found at that location and that this individual had been shot in the back of the head by [Appellant].

*Id.* at 85. At this point, Appellant's counsel lodged an objection, arguing that the court could not use "anything to enhance [Appellant's] sentence that is not based upon a conviction." *Id.* at 87. Thereafter, the Commonwealth continued, stating:

Your Honor, the main point that I would like to make as to the prior allegation of [Appellant] having committed a criminal homicide is that there was a witness, who had come forward about that incident, who then subsequently refused to testify at trial despite being incarcerated for contempt of court for a period of six months prior to the trial date. He still nevertheless refused to come forward, and indicated that this was because someone threatened his life should he testify in that case against [Appellant].

*Id.* at 90. Again, Appellant's counsel objected to the Commonwealth's statement. In each instance, the trial court stated that it would "ignore any argument made by [c]ounsel for the Commonwealth to the extent that I believe it's irrelevant or not appropriate for sentencing purposes." *Id.* at 91; *see also id.* at 89-90 (Trial court stating: "Notwithstanding what [the

Commonwealth] presented through victim impacts or through her argument,

I will only consider what I believe to be relevant.").

Ultimately, in issuing Appellant's sentence, the trial court set forth its

reasoning as follows:

> I have considered the guidelines in this matter and taken them into consideration. I've looked at, reviewed, considered and taken into consideration the information contained in the two pre[-]sentence investigations, one of which I ordered, one of which was generated in 2020 for Judge Robert Colville. I've listened to the argument representations made by [counsel] on behalf of the Commonwealth. I have listened to and taken into consideration the relevant portion of the impact statements made by Tanika Horton and [the Victim].
>
> I will say this. That I will not consider any testimony of Ms. Horton that was not [corroborated by a] document that was made an exhibit in these proceedings. In other words, I will only consider what she's testified to as [it relates] to the documents made exhibits here today, and which were un-objected to or not objected to, excuse me. I, as you know, was the trial Judge in this matter. I've taken into consideration the testimony provided by all the witnesses, including but not limited to, [Appellant] in this matter.
>
> And to the extent it's necessary, let me just say this. That in all my years on the criminal bench here in Allegheny County, I don't think that I have come across a more violent and dangerous individual than [Appellant]. Clearly he has a history of criminal activity both in and out of the jail that stretches for essentially the majority of his life. He's never shied away, based upon the records that I have reviewed, . . . from violent, criminal acts. And he has total disrespect, in my opinion, for the law. He's controlling. He's manipulative.
>
> Based upon his telephone calls from the jail that were played at trial, his threats to [the Victim] and her family clearly were unacceptable, and showed no remorse or understanding for the value of her life, and of the value of her family's life. As I said, he's a danger to himself and the community. His criminal history, and his behavior in jail, and his conduct throughout his life beginning at an early age indicate to me that he is [a]

danger to himself and the community, that he's [immune to rehabilitation], and that he has no desire, as the Commonwealth indicated, to live a crime-free life. His flagrant disregard for the criminal justice system is astounding. He has tried to manipulate this [c]ourt, the federal court, and all other courts apparently who have been involved with him to his own end.

I don't believe based upon the information that I have reviewed, based on the arguments of the [Commonwealth], that he can be supervised without committing additional crimes in society. And, quite frankly, I believe that this world would be a better place without having [Appellant] on the street, and in a position to exercise his criminal instincts with respect to anybody who gets in his way.

*Id.* at 105-108.

Upon review, we do not find support for Appellant's allegation that the trial court herein imposed the instant sentence based upon the Commonwealth's reference to the uncharged allegation of criminal homicide. Instead, it is apparent that the trial court issued Appellant's sentence based primarily upon its consideration of the Appellant's prior convictions, the evidence presented during trial, and Appellant's behavior while incarcerated. We therefore discern no abuse of discretion on part of the trial court. *See Commonwealth v. Campbell*, 347 A.3d 707, 720 (Pa. Super. 2025) (upholding the trial court's sentence because it did not "reasonably appear from the record" that the trial court's sentence was based upon an impermissible factor).

In his final issue, Appellant challenges the legality of his sentence. Appellant argues that his 10-to-20-year incarceration sentence for both counts

of aggravated assault "exceeded the statutory maximum" and, as such, must be vacated.

The relevant standard and scope of review are as follows:

> [T]he determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary. This case will also necessarily call upon us to engage in statutory construction, which similarly presents a pure question of law and also implicates the legality of [the] sentence. Thus, our standard of review is *de novo* and our scope of review is plenary*.*

*Commonwealth v. Hunt*, 220 A.3d 582, 585 (Pa. Super. 2019) (internal citations and quotation marks omitted).

Appellant's claim on appeal lacks any merit because he fails to mention that the trial court imposed the aforementioned sentence for Appellant's aggravated assault convictions pursuant to 42 Pa.C.S. § 9714, Pennsylvania's second and subsequent offense statute. Section 9714 provides, in relevant part, as follows:

> **(a) Mandatory sentence.--**
>
> (1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).

42 Pa.C.S.A. § 9714(a)(1).  In addition, 18 Pa.C.S.A. § 1103, in relevant part, states:

> **Except as provided in 42 Pa.C.S.[A.] § 9714 (relating to sentences for second and subsequent offenses),** a person who has been convicted of a felony may be sentenced to imprisonment as follows:
>
> > (2) In the case of a felony of the second degree, for a term which shall be fixed by the court at not more than ten years.

18 Pa.C.S.A. § 1103(2) (emphasis added).

In this instance, Appellant was subjected to a lengthier sentence based upon his prior convictions in Ohio.  ***See*** Notice of Commonwealth's Intention to Invoke Mandatory Minimum Sentence, 3/3/24, at ¶ 4 (explaining that on August 14, 2003, Appellant was convicted in Lorian, Ohio of the following first-degree felony offenses: aggravated robbery, kidnapping, and aggravated burglary).  Hence, Appellant's claim that the trial court issued an illegal sentence is devoid of merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  4/17/2026

- 40 -